**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**EDNA JANE FAVREAU,**

        **Plaintiff,**

**-vs-**                                                     **Case No.  6:07-cv-723-Orl-22DAB**

**STATE OF FLORIDA,**

        **Defendant.**
_____

**EDNA JANE FAVREAU,**

        **Plaintiff,**

**-vs-**                                                     **Case No.  6:07-cv-1210-Orl-22DAB**

**STATE OF FLORIDA,**

        **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (Doc. No. 39 in Case No. 6:07-cv-723-Orl-22DAB)**
>
> **FILED:**      **August 22, 2007**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED** without prejudice to renewal upon Plaintiff's filing of a Third Amended Complaint that meets with the guidelines set forth below.

      In what can best be described as a tangled procedural history, Plaintiff has appealed to the Eleventh Circuit several non-final and non-appealable rulings on her pleadings. The Eleventh Circuit

has now disposed of the pending appeals (*see* Doc. Nos. 38, 46) and the Court has reviewed the file, including Plaintiff's latest pending motion to proceed *in forma pauperis*[1]. The Court recommends that Plaintiff's Motion be denied without prejudice and Plaintiff be given leave to file one **final** version of her claims in a third amended complaint that complies with the criteria discussed below.

### *Procedural History in 07cv723*

On April 26, 2007, Plaintiff filed her Complaint seeking the federal court's "review of errors" of a decision the Florida Fifth District Court of Appeal, alleging that the courts had violated ADA laws, and the state court denied her "equal access to the court to redress the irrational disability discrimination."[2] Doc. No 1 at 1. On May 9, 2007, the Court recommended denial of Plaintiff's Motion to Proceed *in forma pauperis* because this federal Court was without jurisdiction over Plaintiff's "appeal" of adverse state-court judgments, pursuant to the *Rooker-Feldman* doctrine.

Before District Judge Conway had a chance to rule on the Report recommending dismissal of Plaintiff's Complaint for lack of jurisdiction, Plaintiff filed her Amended Complaint and a Renewed Motion to Proceed *In Forma Pauperis*. Doc. Nos. 7, 8. Thus, the District Judge denied Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. No. 2) as moot in light of Plaintiff's new filings. Doc. No. 9. On May 17, 2007, this Court recommended (Doc. No. 10) denying Plaintiff's Renewed Motion to Proceed *In Forma Pauperis*. Again, before the District Judge could rule, Plaintiff filed a "Notice of Appeal" on the Report and Recommendation and a Motion to Proceed *In Forma Pauperis on Appeal*. Doc. No. 18, 19. No final order had been entered; thus, the matter was not ripe

---

[1] Although Plaintiff erroneously refers to it as a Motion for leave to proceed in forma pauperis "on appeal," there is no currently pending appeal and Plaintiff clearly desires to proceed with her case in the District Court. Based on other erroneous statements in her pleadings, Plaintiff is seeking a review of state court decisions, which this Court does not have jurisdiction to entertain.

[2] As the Court said at that time, "[d]ue to their disorganization and verbosity, Plaintiff's complaints are difficult to follow and characterize. The description herein is an effort to distill the gravamen of Plaintiff's reason for bringing this action."

for appeal, despite Plaintiff's notice of appeal, and this Court recommended that Plaintiff's application to proceed *in forma pauperis* be denied as frivolous. Doc. No. 21. Judge Conway denied Plaintiff's motions on June 26, 2007 (Doc. No. 23) and Plaintiff filed her appeal on July 5, 2007 (Doc. No. 24) as to the denial of the *in forma pauperis*, simultaneous with a Motion for Recusal (Doc. No. 25). On July 26, 2007, the Eleventh Circuit denied both appeals (Doc. Nos. 18, 24) *sua sponte* for lack of jurisdiction. Doc. No. 32.

Plaintiff filed a *third* Notice of Appeal, on July 11, 2007, as to denial of her Motions for Investigation, to Exhibit Evidence, to Proceed In Forma Pauperis, and to Show How Malfeasance Was Used. Doc. No. 27. On August 21, 2007, the Eleventh Circuit dismissed in part most of the appeal and allowed to proceed the appeal of denial of Plaintiff's motion to proceed *in forma pauperis*. Doc. No. 38. On September 17, 2007, the Eleventh Circuit denied the only portion of the appeal which remained outstanding, *i.e.*, Plaintiff's motion for leave to proceed *in forma pauperis*, finding the appeal to be frivolous. Doc. No. 46. Plaintiff has been ordered to pay $455 in fees by October 31, 2007 or her appeal will be dismissed. Doc. No. 46 at 2. Most recently, Plaintiff has filed another rambling and confusing document, the exact purpose of which cannot be discerned, though it appears that Plaintiff is again trying to support her request to proceed in forma pauperis and to have an attorney appointed. (Doc. No. 47).

### *Procedural History in 07cv1210*

In the meantime, while the appeals were pending in the Eleventh Circuit, and immediately following Judge Conway's denial of Plaintiff's Motion for Recusal[3] (Doc. No. 29), Plaintiff filed a

---

[3] On July 30, 2007, Plaintiff filed her second motion for Judge Conway's recusal. Doc. No. 33. The Second Motion for Recusal was also denied. Doc. No. 33.

Motion to "Proceed *In Forma Pauperis* in this New Case from Case Fl. SC07-992[4] With Evidence That the Constitution Was Illegally Violated and Neglected" on July 17, 2007. Doc. No. 30. "Due to clerk oversight: this is filed nunc pro tunc to transfer document 27 Motion/Appeal from old case." Doc. No. 30. The following day, Plaintiff filed a "Motion for Leave of the Court to Correct Error Made by Petitioner" to transfer Doc. No. 27 – filed as a "Notice of Appeal" – which she contends was "filed in error in the wrong case" and transfer it to a new case. Doc. No. 31. Plaintiff contends that she mistitled the document a "Notice of Appeal" rather than a "Complaint."

The Clerk's office subsequently opened a new case at Plaintiff's behest on July 26, 2007. *See* Case No. 6:07cv1210-19-UAM. As such, Plaintiff's motions to "correct errors" or seeking to open the new case were recommended to be denied as moot[5]. Doc. No. 34. Case No. 6:07cv1210 has been transferred to Judge Conway for her consideration. Because the Complaint filed in 6:07cv1210 is virtually identical (and portions appear verbatim) to the Complaints filed in Case No. 6:07cv723, it is respectfully **RECOMMENDED** that Plaintiff's Complaint in 6:07cv1210 be **DISMISSED**, with all pending motions denied as moot.

### *Substance of Motion to Proceed In Forma Pauperis*

Plaintiff has filed a renewed Motion to Proceed *In Forma Pauperis*. Doc. No. 39. In order to proceed *in forma pauperis*, Plaintiff must allege a non frivolous cause of action within the limited jurisdiction of the federal courts. Plaintiff's forty-one page Second Amended Complaint remains unclear as to the proper *federal* basis of relief sought and the legal bases for seeking relief.

---

[4]SC#07-992 is the number assigned by the Florida Supreme Court to Plaintiff's appeal of a state court judgment in Case No. 2006-20046 in Volusia County Court. The Supreme Court ruled that it was without jurisdiction and dismissed her petition for review. *See www.clerk.org/cm/servlet/org.clerk.cm.casemgt.GetResults* (Volusia County Court website) The Volusia County Court website indicates that Edna Jane Favreau was suing Anna May Favreau in small claims for failure to return her assets "that were improperly held in Walter Favreau's estate."

[5]The recommendation (Doc. No. 34) remained pending (and stayed) while Plaintiff's appeals were pending in the Eleventh Circuit.

In general, *pro se* litigants are entitled to wide latitude when construing their pleadings and papers. *See SEC v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992); *see also Harris v. McDonald's Corp.,* 901 F.Supp. 1552, 1555 (M.D. Fla. 1995) (pro se litigant's complaint is to be held to less stringent standards than formal pleadings drafted by an attorney). One appellate court has articulated the underlying policy rationale for this rule as follows: "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). However, the general rule of liberal construction does not require courts to exempt pro se litigants from complying with the requirements imposed by the relevant rules of procedure and substantive law. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *Harris,* 901 F.Supp. at 1555 (pleadings of a pro se litigant must meet minimal pleading standards).

In Plaintiff's Second Amended Complaint (Doc. No. 14), she vaguely and confusingly seeks the review of orders and judgments entered in the state courts concerning abuse by her ex-husband and their divorce proceedings. She alternatively seeks a criminal investigation into how the matters were handled in state court (alleging fraud, perjury, whistleblowing, nepotism and a conspiracy including the state court officers), a review of the property division of marital assets she was awarded in the divorce, or consolidation and review of all "related Favreau cases" for errors.

As the Court has previously advised Plaintiff, this is a court with jurisdiction limited to claims involving federal questions and statutes[6]. **This Court simply does not have jurisdiction to review or overturn state court judgments adverse to Plaintiff.** To the extent Plaintiff is appealing from a probate or divorce decision of the Florida courts awarding certain property to her ex-husband or

---

[6]The Court also has jurisdiction over other kinds of claims not relevant to Plaintiff's litigation; thus, those possible grounds for jurisdiction is not discussed.

others in her family, this federal trial court is **without jurisdiction to hear it**, no matter how egregious she believes the final outcome of those cases to be.

Federal courts cannot review state court proceedings that address divorce or marital property division, since the federal courts are not a forum for appealing state court decisions. *Hays v. Hays*, 789 F.Supp. 378, 379-380 (M.D. Fla. 1992) (citing *Staley v. Ledbetter*, 837 F.2d 1016, 1017-1018 (11th Cir. 1988) (district court lacked jurisdiction to hear a constitutional claim which essentially sought to reverse a state court's custody determination)).  The United States District Court "has no authority to review final judgments of a state court in judicial proceedings.  Review of such judgments may be had only in [the United States Supreme Court]." *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923). Nor, under the *Rooker-Feldman* doctrine, may a federal court "decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment," such as family law decisions. *See Datz v. Kilgore*, 51 F.3d 252, 253 (11th Cir. 1995) (quoting *Staley v. Ledbetter*, 837 F.2d 1016, 1018 (11th Cir. 1988)).

Plaintiff filed her original Complaint[7] seeking "review of errors in decisions by the Florida Supreme Court dated April 20, 2007 and the Fifth District Court of Appeal, denying federal ADA laws to a certified disabled victim of crime," and alleging the "lower court's obstruction of her justice by denying equal access to the court to redress the irrational disability discrimination." Doc. No 1. Plaintiff contended that there was "concrete evidence to 'prove' that several officers in the lower court have abused their power by having no loyalty to the law of the land." Doc. No. 1 at 2. Plaintiff has

---

[7]Plaintiff also claimed that she was bringing a class action suit with "a class of one." Doc. No. 1. Based on case numbers for Plaintiff's matters in Volusia County Court listed in the original Complaint, it appeared that Plaintiff was involved in a number of probate, small claims, and mortgage foreclosure actions litigating against Anna May Favreau; these cases now appear closed. Doc. No. 1; *see* www.clerk.org/cm/servlet/org.clerk.cm.casemgt.GetResults (Volusia County Clerk's website for public records search).

since amended her Complaint twice, filing the currently-operative Second Amended Complaint on May 25, 2007. Doc. No. 14.

Although Plaintiff has carefully deleted direct reference to the state court decisions in the Second Amended Complaint, it still suffers from the same jurisdictional defect in that she complains that this federal District Court should review the decisions of the state courts and officials for errors, fraud, perjury, and a conspiracy conducted by the "lower" court. Doc. No. 14. To the extent Plaintiff's claims seeks a reversal of the Florida state courts' decisions in a probate or divorce case, this Court is without jurisdiction over those claims. *See Staley v. Ledbetter*, 837 F.2d 1016, 1018 (11th Cir. 1988)) (federal district courts may not decide federal issues that are raised in state proceedings and 'inextricably intertwined' with the state court's judgment).

The only potentially viable *federal* claim that can be discerned in Plaintiff's pleadings is one that might be brought under the Americans with Disabilities Act ("ADA"), although any such claim is not pleaded with sufficient clarity and particularity to determine whether Plaintiff actually states a claim.

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) that she is a 'qualified individual with a disability;' (2) that she was 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132). Under the ADA[8], this federal court has jurisdiction to hear claims alleging that officials at a state courthouse have failed to provide a requested accommodation to a person who tries to access or obtain services from the state courthouse. *See, e.g.*, *Tennessee v. Lane*,

---

[8] A plaintiff cannot maintain a 42 U.S.C. § 1983 action in lieu of or in addition to an ADA cause of action if the only alleged deprivation is the plaintiff's rights created by the ADA. *Badillo v. Thorpe,* 158 Fed. Appx. 208 (11th Cir. 2005) (unpublished) (citing *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th 1997)).

541 U.S. 509, 513 (2004) (federal court had jurisdiction over claims by paraplegics using wheelchairs who alleged ADA claims against counties and state governments for alleged denial of access to, and the services of, the state court system based on their disabilities); *Badillo v. Thorpe,* 158 Fed. Appx. 208 (11th Cir. 2005) (unpublished) (federal trial court had jurisdiction over ADA claim alleging that state court had improperly denied infrared assistive listening device to hearing-impaired plaintiff; ADA claims ultimately dismissed).

In this case, although Plaintiff refers to herself several times as "disabled" in her pleadings, she devotes only four phrases of her forty-one page Second Amended Complaint to any specific mention of her "disability." Without specifically defining her disability, she describes herself variously as having "limited mental capabilities when under stress" (Doc. No. 14 at 7); as requiring an "understand hearing aid" (*id*. at 18, 25); or "needing extra time to make words" in court (*id* at 23). Plaintiff also refers to her disability as a "medical condition that causes her to get overwhelmed and panic when injustices are done to her." Doc. No. 14 at 30. In a footnote she explains that "[w]hen the panic sets in she has an overwhelming need to try and explain things in the only way she knows how because when in the court room she is unable to speak as fast as normal people are able to speak and her thoughts get all mixed up due to the severe panic if she hurries it only gets much worse. Hypergraphia is an overwhelming urge to write, associated with temporal lobe changes[9]." Doc. No. 14 at 30. If Plaintiff's disability is a hearing impairment or diagnosed stress-related disorder, she must explicitly state that; if not, she must describe with specificity whatever disability she alleges she suffers from.

---

[9]Hypergraphia has been defined as the driving compulsion to write. Temporal lobe epilepsy is associated with hypergraphia. See http://www.medterms.com. It is not clear how such a potential symptom of a disability would have any relation to a hearing impairment.

Under the federal regulations promulgated to effectuate Title II of the ADA, "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). Further, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). "In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities." 28 C.F.R. § 35.160(b)(2).

The regulations define "[a]uxiliary aids and services" as including:

> Qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.

28 C.F.R. § 35.104.

The only reference Plaintiff makes to such an allegation is "[w]hen the judge removed her auxiliary hearing and understanding aid[10] that helped her control the panic [it] was against the Federal ADA laws." Doc. No. 14 at 30. In an earlier pleading, Plaintiff alleged that her "auxiliary hearing and understanding aid" could "replay" what was going on – much like a tape recorder – was taken away from her at the state court. Doc. No. 1 at 21. If Plaintiff is allowed to file a third amended complaint, Plaintiff must identify the accommodation she sought in state court that was allegedly denied to her.

---

[10]This Court cannot determine what kind of device Plaintiff intends to refer to when she uses this phrase.

Plaintiff has failed to provide a clear and consistent specification of her disability. Plaintiff has failed to identify the specific accommodations she sought from the state court and from whom she sought them. In addition, she has provided no detail whatsoever of when or where the hearing took place in which Plaintiff was allegedly denied accommodation for her alleged disability.[11]

An affidavit from Barbara Mee, prepared for a case in Brevard County Circuit Court, is inserted in Plaintiff's Second Amended Complaint and states:

> On January 27, 1995, I personally went with Edna Jane Favreau to attend a court session presided over by Judge Rainwater. . . . Ms. Favreau requested of Judge Rainwater time to explain her case in court. This request was recognized, however, time was not allotted for further statements by Ms. Favreau.

Doc. No. 14 at 34.

It is not clear in Plaintiff's Second Amended Complaint if Plaintiff is asserting claims arising solely from the January 1995 hearing before Brevard Circuit Judge Rainwater mentioned in the Mee Affidavit, which occurred twelve years before suit was filed in this Court; such claims are clearly barred by the applicable four-year statute of limitations for ADA claims in Florida. *See, e.g., Moyer v. Walt Disney World Co.*, 146 F.Supp.2d 1249, 1254 (M.D. Fla. 2000) (statute of limitations in ADA case are governed by Florida's four-year personal injury statute of limitations, Fla. Stat. § 95.11(3)) (citing *Everett v. Cobb County School District*, 138 F.3d 1407, 1409-10 (11th Cir. 1998) (claims under the ADA are governed by the state statute of limitations applicable to personal injury actions)). Plaintiff must allege with specificity the approximate time and place of the hearing(s) where an accommodation of her disability was allegedly denied; such allegations must be for conduct which

---

[11]Plaintiff has repeatedly thrown together argument, citations to statutes and caselaw, and confusing disjointed references to many different court proceedings. Her refusal to provide a simple and plain statement of her claim is the impediment to this case moving forward. Neither the Court nor the defendants can understand, respond to or adjudicate "claims" set forth in such a haphazard and illogical fashion.

occurred within the four-year statute of limitations applicable to such ADA cases for conduct alleged to have occurred in the Florida state courts.

## *CONCLUSION*

The Court recommends that Plaintiff's Motion to Proceed *In Forma Pauperis* be denied without prejudice and Plaintiff be given leave to file one **final** version of her claims in a "Third Amended Complaint" setting forth the following:

1. Plaintiff she must specifically describe the recognized disability or disabilities she alleges she suffers from;

2. Plaintiff must identify the accommodations for such disabilities she sought in state court that was allegedly denied to her;

3. Plaintiff must specify the dates **within the last four years** and the place of the hearing(s) where an accommodation of her disability was allegedly denied;

4. Plaintiff must omit any discussion of an "appeal" or "review" of the merits of the disputes discussed in the state court hearing. For example, Plaintiff will refer to the state court proceeding generally as a "hearing" without discussing what the hearing was about since this Court does not have jurisdiction to review those final judgments.

Plaintiff is admonished that any subsequent amended complaint must be clear and concise. Any repetition of the confusing hodgepodge characteristic of her prior filings will result in dismissal. Although Plaintiff claims to have difficulty using words, if she wishes to pursue a claim in this Court, it is ultimately her responsibility to state that claim plainly and precisely, consistent with the requirements of the rules of procedure.

It is further respectfully **RECOMMENDED** that Plaintiff's Complaint in 6:07cv1210 be **DISMISSED**, with all pending motions denied as moot. Likewise, to the extent some additional relief

is sought in the **filing docketed as no. 47 in Case 07cv723**, it should also be **denied** in light of the recommendations herein.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 25, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Unrepresented Party
Courtroom Deputy